```
               IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF OREGON

SIERRA CLUB, et al.,           )
                               )
              Plaintiffs,      )    Civil No. 03-1697-HO
                               )    Lead Case
     and                       )    (Consolidated Case No.
                               )     06-6071-HO)
UNITED STATES OF AMERICA,      )
                               )
              Intervenor,      )
                               )
     v.                        )    O R D E R
                               )
MASTEC NORTH AMERICA, a private)
corporation, et al.,           )
                               )
              Defendants.      )
```

These cases involve alleged violations of the Clean Water Act (CWA) during the construction of a 60-mile natural gas pipeline and certain lateral pipelines in Coos and Douglas Counties, Oregon. Plaintiffs Sierra Club, Coos County Coalition, and Klamath-Siskiyou Wildlands Center sought summary judgment on their claim that defendants MasTec, Inc. and Clark Besack discharged pollutants into the navigable waters of the United States without permit authorization in violation of 33 U.S.C. § 301(a). The parties involved in that motion have resolved the case and the motion is denied as moot. In

addition, the government seeks summary judgment as to three of defendant MasTec's defenses to CWA liability.

In November of 2000, Coos County applied for authorization from the United States Army Corps of Engineers to install the pipeline pursuant to 33 U.S.C. § 1344 (section 404 permit). The corps granted authorization under the terms and limitations of Nationwide Permit 12 for utility line activities and issued a permit to Coos County. The pipeline runs from near Roseburg, Oregon to Coos Bay, Oregon and is 12 inches in diameter.

On March 25, 2003, Coos County applied for a permit for a 17-mile lateral pipeline system to consist of: (1) a 6-inch pipe branching off the mainline pipe at Fairview and extending 8.7 miles to Johnson Mill, Oregon; (2) a 4-inch pipe from the end of the 6-inch pipe 2.2 miles north to city of Coquille, Oregon; and (3) a 4-inch pipe from the end of the 6-inch pipe 6 miles south to the town of Myrtle Point, Oregon.

In June of 2003, defendant MasTec entered into a contract with Coos County to construct the pipeline. Mastec began building the right of way corridor later that month.

Beginning in the middle of September 2003, the Corps issued several notices of noncompliance and cease and desist orders to Coos County and Mastec for alleged violations of the permit. On November 14, 2003, the Corps alleged that the construction corridor at stream crossings had not been minimized to the maximum extent possible in violation of the permit's Regional Condition 7.

By the middle of November, MasTec had crossed most of the 188 stream crossing identified in the permit. MasTec ceased operations in December. Coos County terminated MasTec from the contract in April of 2004 and hired Rockford Corporation to complete the pipeline.

The United States has intervened in this case asserting violations of the CWA permit at more than 165 streams and/or wetlands constituting waters of the United States. The United States also asserts that MasTec discharged dredged or fill material (constituting pollutants) into more than 15 streams and/or wetlands, that are waters of the United States, without a section 404 permit.

Defendant MasTec has raised affirmative defenses and the United States seeks summary judgement as to MasTec's assertions of violation of due process, reduction of responsibility due to contractor status, and reduction of responsibility due to terms of the contract with Coos County.

A.   Due Process

The United States alleges that MasTec failed to comply with Regional Condition 7 of the section 404 permit at 157 streams and wetlands. Regional Condition 7 of the section 404 permit provided

> When working in waters of the United States or riparian areas, the construction boundary shall be minimized to the maximum extent practicable. Permittee shall mark and clearly define the construction boundary before beginning work. Native riparian vegetation will be successfully established along tributaries where the vegetation was removed by construction. The plantings shall start at the ordinary high water mark and extend 10 feet back from the top of the bank. The plantings must be completed by the end of the first planting season following the disturbance.

Declaration of Kent E. Hanson (#100) at Ex. 2, p. 15.

Defendant MasTec contends that the United States imposed "an after the fact 'necking down' interpretation" of regional condition 7 in violation of the Due Process Clause of the United States Constitution. MasTec contends that although the condition is not facially void for vagueness, the interpretation, communicated after most of the work had been completed, that the width of the construction boundary had to be narrowed at stream crossings compared to the width in upland areas, violates due process due to lack of notice. This argument, however, presupposes that the condition in the permit is ambiguous and that the Corp's interpretation, was irrational. As noted, MasTec does not contend that the condition was facially vague.

A law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits. <u>Giaccio v. Pennsylvania</u>, 382 U.S. 399, 402-403 (1966). Whether a permit is unconstitutionally vague is a question of law. <u>United States v. Christopher</u>, 700 F.2d 1253, 1258 (9th Cir. 1983). In evaluating a question of vagueness, courts generally look to the common understanding of the terms of a permit. <u>United States v. Fitzgerald, 882 F.2d 397, 398 (9th Cir. 1989)</u>. However, if the permit refers to conduct of a select group of persons having specialized knowledge, and the challenged phraseology is indigenous to the parlance of that class, the standard is lowered and a court may uphold a permit which uses words or phrases having a

technical or other special meaning, well enough known to enable those within its reach to correctly apply them. <u>Precious Metals Assocs., Inc. v. Commodity Futures Trading Commission</u>, 620 F.2d 900, 907 (1st Cir. 1980).

While MasTec presents a pipeline industry case where the contractor widened the right of way rather than narrowing it, the issue here is whether Regional Condition 7 can reasonably be construed to give adequate notice that "necking down" could be required. The plain language of the condition encompasses such a requirement in that it specifically states "the construction boundary shall be minimized to the maximum extent practicable." The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding. <u>Sproles v. Binford</u>, 286 U.S. 374, 393 (1932). If the consideration of reducing the width of the construction boundary at crossings were not included in the condition, the condition would be virtually meaningless. <u>Cf</u>. <u>id</u>. ("The use of common experience as a glossary is necessary to meet the practical demands of legislation. In this instance, to insist upon carriage by the shortest possible route, without taking the practicability of the route into consideration, would be but an arbitrary requirement, and the expression of that which otherwise would necessarily be implied, in order to make the provision workable, does not destroy it").

Moreover, MasTec is incorrect in its argument that the United States has applied a "hard-and-fast" rule from the condition of

5 - ORDER

"necking down." The record establishes a case-by-case determination. The issue here is not whether the condition is vague or whether it was applied in a vague manner, but, rather, whether narrowing the construction boundary at stream crossings as opposed to the upland boundary in this case is necessary to minimize to the maximum extent practicable.[1] That is an issue of fact that requires a trial, but it does not establish that the condition is unconstitutional. The motion for summary judgment as to MasTec's due process defense is granted.

B. <u>Contractor Status</u>

MasTec contends that as a contractor to Coos County it is only responsible for complying with those duties that were delegated to it. While it is true that MasTec was not the project manager, it is nonetheless responsible for CWA violations caused by its construction activities. Liability is predicated on either performance of the work or control over performance of the work. <u>See</u> <u>U.S. Board of Trustees of Florida Keys Community College</u>, 531 F.Supp. 267, 274 (S.D.Fla 1981). Accordingly, to the extent MasTec caused any CWA violations, intentionally or unintentionally, it is responsible and may not avoid that responsibility merely because it was only a contractor. To the extent MasTec relies on its contractor status to avoid liability for any acts for which it was responsible or performed, the motion for

---

[1] For instance, defendant may be correct that given the logistics involved in trenching through certain banked crossings, more working space, not less, is required for reasons such as accounting for the increased amount of soil that must be removed. Nonetheless, the condition unambiguously requires consideration of the practicality of alternatives with less impact.

summary judgment is granted. However, MasTec contends not that its contractor status limits its liability, but that the terms of the contract reduces its liability for any CWA violations. MasTec specifically contends that its is not liable for any CWA violations by virtue of failing to perform tasks that it was not delegated.

C.  Contract Terms and Liability

MasTec's argument here neglects the undisputed fact that the contract specifically required that it comply with the permit. Moreover, MasTec cannot avoid liability under the CWA by contracting away its compliance with applicable law. See Hudson County Water Co. v. McCarter, 209 U.S. 349, 357 (1908) ("One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the state by making a contract about them.").

However, causation is still a necessary element under the CWA, despite strict liability. See United States v. Moon Lake Electric Assoc., Inc., 45 F.Supp.2d 1070, 1077 (D.Colo 1999). Still, the issue before the court on the summary judgment motion is whether the contract terms reduces MasTec's responsibility for any violations. The contract unambiguously requires MasTec to familiarize itself and comply with all permits.

A violation of the CWA occurs where there is (1) a discharge of a pollutant; (2) into navigable waters; (3) from a point source; (4) without a discharge permit. Committee To Save Mokelumne River v. East Bay Mun. Utility Dist., 13 F.3d 305, 309 (9th Cir. 1993). As noted

above, causation is established by performance of the work or control over performance of the work.

Regardless of how the contract apportioned responsibility, MasTec is responsible for any discharges it actually caused. In addition, the contract unambiguously required MasTec to build the pipeline in a manner that complied with environmental laws and permits. Simply because the contract specified the crossing methods to be used or erosion control methods, such does not relieve MasTec of responsibility to the extent its implementation of those methods resulted in any violations. Similarly, to the extent MasTec argues that the contract contained inadequate specifications such as with respect to erosion control, MasTec is still responsible to the extent its activities in installing erosion controls failed to comply with the CWA or the permit. The contract unambiguously requires MasTec to install erosion controls in compliance with the permit.

Moreover, the contract does not relieve MasTec's liability for performing in stream work after September 15, 2004. The close of the in-water work window was September 15, 2004, and a special condition of the permit required completion of all work in jurisdictional waters within the window. The contract did not limit the condition to streams with perceptible flow and neither did the permit. The context of both the contract and permit make clear that water flow was not necessary to trigger the requirement. Intermittent flows can constitute a stream. See Northern California River Watch v. City of Healdsburg, 496 F.3d 993, 995-96 (9th Cir. 2007) (to qualify as a

regulable water under the CWA the body of water itself need not be continuously flowing).

In addition, the County's retention of the duty to identify environmentally sensitive areas does not alleviate MasTec's liability for any violations it caused. Even assuming the County failed to flag such areas, MasTec undertook to build the pipeline through stream crossings anyway. To the extent MasTec's activities resulted in violations, the failure of the County to flag areas or specify erosion control plans does not relieve MasTec of liability. This is not to say that the court will not consider the contract and Coos County's role in determining appropriate penalties. However, that is not the subject of the summary judgment motion.

The United States' motion also seeks the court's interpretation of the contract as to whether it entitles MasTec to compensation in excess of the contract price for work that was needed to comply with the CWA. MasTec's reliance on pipeline industry standards is not admissible to change the terms of the contract. The contract did not include detailed specifications for implementing stream crossings and erosion controls, it simply required MasTec to perform all work necessary to build the pipeline in compliance with the CWA and the permit. Such work would not constitute a basis for seeking a change order for payment in addition to the contracted price. MasTec accepted the risk for failing to estimate the costs of compliance with the CWA.

CONCLUSION

For the reasons stated above, the United States' motion for partial summary judgment (#97) is granted. In addition, plaintiffs Sierra Club, Coos County Coalition, and Klamath-Siskiyou Wildlands Center's motion for summary judgment (#101) is denied as moot.

DATED this __12th__ day of December, 2007.

                                                __s/ Michael R. Hogan__
                                                United States District Judge